UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:22-CV-00292-DJH-CHL

**MEDISCRIBES, INC.,**                                                                **Plaintiff,**

v.

**SKYSCRIPTION, LLC,**                                                      **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion for Order to Show Cause or In the Alternative Motion for Sanctions of Defendant SkyScription, LLC ("SkyScription"). (DN 27.) Plaintiff Mediscribes, Inc. ("Mediscribes") filed a response, and SkyScription filed a reply. (DNs 28, 29.) Therefore, these matters are ripe for review.

**I.      BACKGROUND**

      **A.      General Procedural History**

Plaintiff Mediscribes is a company that "develops and provides medical transcription and document management solutions to its customers in the healthcare and related industries." (DN 1, at ¶ 7.) Mediscribes filed the instant collection action against Defendant SkyScription asserting claims of breach of contract and unjust enrichment based on the terms of a June 20, 2019, Transcription Services Agreement (DN 1-1) that Mediscribes claimed SkyScription breached. (DN 1, at ¶¶ 2, 9, 13-14.) In particular, Mediscribes claimed that it performed transcription services pursuant to the Parties' contract and that SkyScription did not pay outstanding invoices for the services that were dated between April 30, 2020, and February 28, 2022, totaling $85,171.01. (*Id.* at ¶¶ 13-14.) While its lists a number of defenses in its answer, one of SkyScription's primary defenses appears to be based on an allegation that "Mediscribes' system saw unauthorized use

which redirected SkyScription payments to a potentially unauthorized person or entity." (DN 29, at PageID # 302; DN 5.)

Discovery commenced in this case on August 17, 2022, after the Parties met and conferred as required by the Court's Order for Meeting and Report (DN 8) and Rule 26(f). (DN 10.) *See also* Fed. R. Civ. P. 26(d)(1). On September 20, 2022, the Court conducted a telephonic scheduling conference, after which it entered a scheduling order setting the Parties a deadline of July 29, 2023, to complete fact discovery. (DN 14.) The Court set a telephonic status conference with the Parties for June 13, 2023, to check in on their progress. (*Id.*) The Court's Scheduling Order not only required the Parties to make a good faith effort to resolve discovery disputes prior to filing discovery motions but also required the Parties to contact the undersigned's Chambers to schedule a telephonic conference with the undersigned prior to filing any such motion. (*Id.* at ¶ 8.)

SkyScription served written discovery on Mediscribes on January 12, 2023, and Mediscribes served its responses on February 13, 2023. (DNs 16, 17.) However, on April 26, 2023, Mediscribes filed a Motion to Compel alleging that that it had still not received SkyScription's responses to its written discovery that had been served on January 13, 2023, as of the date of filing the motion. (DN 19.) The Court denied Mediscribes' motion without prejudice on May 3, 2023, because Mediscribes had not complied with the provision of the Court's Scheduling Order requiring it to schedule a telephonic conference with the undersigned prior to filing a discovery motion. (DN 20.) The Court directed the Parties to contact the Court's case manager to schedule a conference on the dispute. (*Id.*) On May 22, 2023, SkyScription filed a notice of service indicating that it had served its discovery responses. (DN 21.) And the Parties subsequently advised the undersigned's Case Manager via e-mail that the issue underlying the prior motion to compel had thus been resolved.

But further issues arose. As the Parties detailed in their July 14, 2023, status report, Mediscribes was unsatisfied with the discovery responses provided by SkyScription, which Mediscribes had requested that SkyScription supplement. (DN 22.) But SkyScription also indicated that it was unhappy with Mediscribes' responses to its own written discovery, which it characterized as being full of "boilerplate objections that fail to specifically show how the objected-to Interrogatory or Request is overly broad or unduly burdensome, or what part of the request is vague or confusing." (*Id.* at PageID # 84.) SkyScription likewise requested that Mediscribes supplement its prior responses. (*Id.*)

The matter then came before the Court for a status conference on June 13, 2023. (DN 23.) The undersigned advised the Parties during the call that discovery was not proceeding in this case as it should and that both sides were over-relying on their belief that delay was the other side's fault. The Court instructed both Parties to prioritize meeting scheduling deadlines going forward and to come up with a plan to complete the remaining discovery. The Court also noted that initial disclosures sometimes serve as a substitute for discovery and that both sides likely had a virtual box of documents related to this case. The Court instructed both Parties to "exchange non-privileged and discoverable documents and confer regarding a joint discovery plan" and report back to the Court. (*Id.*)

SkyScription filed a notice of service in the record indicating that it served supplemental responses to Mediscribes' written discovery requests on June 30, 2023. (DN 24.) On July 14, 2023, the Parties filed a joint status report regarding the status of discovery. (DN 25.) SkyScription reported that it felt "the discovery process remain[ed] hindered by [Mediscribes'] failure to adequately respond to [SkyScription]'s requests." (*Id.* at PageID # 89.) Specifically, it noted that it felt Mediscribes had not adequately responded to Request for Production Documents

3

("RFPD") Nos. 2 and 3 served by SkyScription. (*Id.*) Mediscribes disagreed, stating that it "ha[d] produced all documents in its possession, custody, or control responsive to [SkyScription]'s first set of written discovery requests" and would supplement its responses "if any additional responsive documents or communications [we]re found." (*Id.* at 91.) The Parties jointly reported that they believed the prospects for settlement were high and that they requested an extension of the applicable discovery deadline to facilitate ongoing settlement negotiations. (*Id.* at 91-92.) The Court adopted the Parties' proposal, extending the Parties' discovery deadline to September 29, 2023, and the deadline for filing dispositive motions to October 31, 2023. (DN 26.) The Court also reminded the Parties that "before the filing of any discovery motion, all counsel must make a good-faith effort to resolve the dispute and contact the undersigned to schedule a telephonic conference concerning the discovery dispute counsel have failed to resolve." (*Id.* at PageID # 93 (citing DN 14, at PageID # 51).)

Despite that reminder, on August 25, 2023, SkyScription filed a Motion for Order to Show Cause or in the Alternative Motion for Sanctions regarding the deficiencies it perceived in Mediscribes' responses to written discovery. (DN 27.) Mediscribes filed a response, and SkyScription filed a reply. (DNs 28, 29.) Because SkyScription had not requested a discovery conference with the undersigned as required, the Court denied the motion (DN 27) without prejudice and ordered the Parties to schedule one. (DN 31.) The Court held that conference on November 20, 2023. (DN 33.) Based on the Parties' positions during the conference, it was apparent that there was no compromise to be reached on the positions set forth in the briefing and that the Parties just needed a ruling from the Court. (*Id.*) Therefore, the Court reinstated the discovery motion (DN 27) to the active docket. Because SkyScription represented that a ruling on the motion would affect its response and defenses on the merits of the case, the Court also held the

deadline for SkyScription to respond to Mediscribes' Motion for Summary Judgment (DN 30) in abeyance pending resolution of the discovery issue.

### B. The Instant Motion and Related Discovery

While both Parties have expressed their frustration with the opposing side's discovery responses, the instant dispute relates to Mediscribes' responses to written discovery propounded by SkyScription. On January 12, 2023, SkyScription served written discovery on Mediscribes that included the following requests:

> **REQUEST FOR PRODUCTION NO. 2:** Please provide a copy of any and all communications generated by or received by any individual at Mediscribes, Inc. regarding the contract at issue or SkyScription, LLC.
>
> **REQUEST FOR PRODUCTION NO. 3:** Please provide a copy of all communications between Mediscribes, Inc. and SkyScription, LLC.

(DN 16; DN 27, at PageID # 95; DN 27-2, at PageID # 117.) Mediscribes responded to the requests on February 13, 2023, as follows:

> **REQUEST FOR PRODUCTION NO. 2:** Please provide a copy of any and all communications generated by or received by any individual at Mediscribes, Inc. regarding the contract at issue or SkyScription, LLC.
> **RESPONSE:** Mediscribes objects to this Request by incorporating General Objection Nos. 1-6. Subject to and without waiving any objections, *see* **Exhibit 1**.
>
> **REQUEST FOR PRODUCTION NO. 3:** Please provide a copy of all communications between Mediscribes, Inc. and SkyScription, LLC.
> **RESPONSE:** Mediscribes objects to this Request by incorporating General Objection Nos. 2 and 3. Subject to and without waiving any objections, *see **Exhibit 1.***

(DN 17; DN 27-2, at PageID # 117 (emphasis in original).) The relevant "General Objections" included at the beginning of Mediscribes' discovery responses stated as follows:

### GENERAL OBJECTIONS

> 1. Mediscribes objects to each Interrogatory and Request for Production of Documents to the extent they are vague, ambiguous and confusing.

    2. Mediscribes objects to each Interrogatory and Request for Production to the extent they seek information and/or documentation that is not reasonably relevant to the subject matter in the pending action or reasonably calculated to lead to the discovery of admissible evidence.

    3. Mediscribes objects to each Interrogatory and Request for Production of Documents to the extent they are overly broad and unduly burdensome.

    4. Mediscribes objects to the Interrogatories and Requests for Production of Documents to the extent that the burden of deriving or ascertaining the answer and/or applicable documentation is substantially the same for the Plaintiffs as for the [ ] Defendant[ ].

    5. Mediscribes objects to the Interrogatories and Requests for Production of Documents to the extent they call for a legal conclusion.

    6. Mediscribes objects to each Interrogatory and Request for Production of Documents to the extent they may be construed as seeking information and/or documentation that invades the attorney/client, work product, trial preparation and consulting expert privileges or protections, or any other applicable privilege or protection.

(DN 27-2, at PageID # 107-08.) The "Exhibit 1" referenced in the responses to RFPDs Nos. 2 and 3 consisted of four email chains between employees of Mediscribes and SkyScription and no intraoffice emails between Mediscribes employees. (DN 27, at PageID # 96.) Mediscribes represented that its lead counsel was on parental leave at the time of the production but that it "conducted a search of its systems for all documents responsive to the Requests" prior to making its production. (DN 28, at PageID # 266.) It also clarified that what SkyScription described as four email chains consisted in total of approximately forty-five emails. (*Id.*)

SkyScription's counsel sent Mediscribes' counsel a deficiency letter regarding this and other perceived issues with Mediscribes' responses on June 9, 2023. (DN 27, at PageID # 96; DN 27-3.) The letter took issue with the boilerplate objections lodged by Mediscribes as well as with the fact that the initial production contained no internal communications. (DN 27-3.) Mediscribes represented that after it received the deficiency letter, it "conducted another thorough search of its

6

systems and email accounts for documents responsive to the Requests to ensure it was complying with its discovery obligations." (DN 28, at PageID # 266.) Thereafter, on July 10, 2023, Mediscribes provided supplemental responses, including a supplemental response to RFPD No. 2 as follows:

> **REQUEST FOR PRODUCTION NO. 2:** Please provide a copy of any and all communications generated by or received by any individual at Mediscribes, Inc. regarding the contract at issue or SkyScription, LLC.
> **RESPONSE:** Mediscribes objects to this Request by incorporating General Objection Nos. 1-6. Subject to and without waiving any objections, *see* **Exhibit 1**.
> **SUPPLEMENTAL RESPONSE**: Subject to, and without waiving any objections, Mediscribes has produced all nonprivileged, responsive documents.

(DN 27-2, at PageID # 117.) Mediscribes also produced additional documents including a total of four intra-office e-mails. (DN 27, at PageID # 97; DN 27-5.) One of those e-mails was sent from Pranay Shukla, Mediscribes' former financial controller, to Mahmadali Sabuvala, a senior accounts executive, and another individual and was a forward of a message from a SkyScription employee to a Mediscribes employee. (DN 27-5, at PageID # 139.) The lead message in the forwarded chain said, "Keep this email for the Skyscription Case," and the e-mail is dated October 3, 2022, which is *after* the Complaint was filed in this matter on June 2, 2022. (*Id.*; DN 1.) Around that time, Mediscribes also discovered that its initial production had not included certain correspondence with SkyScription regarding Mediscribes' invoices so it supplemented with those nineteen additional e-mails. (DN 28, at PageID # 266-67.)

The Parties discussed SkyScription's dissatisfaction with Mediscribes' responses as part of their preparation of the joint status report they filed with the Court on July 14, 2023. (DN 27, at PageID # 97; DN 28, at PageID # 267.) Mediscribes counsel again assured SkyScription's counsel during their conversations that "Mediscribes had produced all responsive emails in its possession, custody, or control." (DN 28, at PageID # 267.) Counsel for the Parties also exchanged e-mails in which SkyScription's counsel expressed his skepticism that all relevant emails had been

7

produced and in which Mediscribes' counsel continued to maintain that she had gotten "all responsive email communications from" her client. (DNs 27-7, 28-1.) SkyScription then proceeded to file the instant motion on August 25, 2023. (DN 27.)

Mediscribes' counsel represented in its response that given the motion, "in order to confirm Mediscribes ha[d] fully complied with its discovery obligations, Mediscribes engaged in another full search of its systems and the email accounts of all employees who were involved in the SkyScription relationship for all communications related to the Transcription Services Agreement or SkyScription." (DN 28, at PageID # 268.) In doing so, Mediscribes found three additional responsive emails that were then produced to SkyScription on September 12, 2023. (*Id.*; DN 28-2.) Mediscribes noted that two of the three emails it produced on that date had previously been produced by SkyScription. (DN 28, at PageID # 268.) Mediscribes' counsel then again affirmed in its response filed in the record:

> The undersigned counsel has confirmed with Mediscribes that Mediscribes has conducted a thorough search of its systems and all relevant email accounts for any communications regarding the Transcription Services Agreement or SkyScription, including all internal communications and all communications between Mediscribes and SkyScription, and Mediscribes has produced all responsive communications in its possession, custody, or control.

(*Id.*)

In its motion, SkyScription argued that Mediscribes had not fully responded to RFPD Nos. 2 and 3 and particularly RFPD No. 2. (DN 27.) It expressed disbelief that given the number of individuals involved and the time span of the Parties' relationship that there were not more internal emails than what it received. (*Id.* at PageID #98.) It cited to certain Mediscribes corporate policies reflecting that email was to be used for both internal and external official communications and to other corporate policies regarding email to support its position that more emails must exist. (*Id.* at 99; DNs 27-8, 27-9, 27-10.) It argued that the only two plausible explanations for the situation it

8

was facing were that Mediscribes had willfully failed to produce all responsive communications or that Mediscribes had lost or destroyed responsive communication either inadvertently or willfully. (DN 27, at PageID # 100-01.)

Unsurprisingly, Mediscribes disagreed. (DN 28.) Its response, as set forth above, continued to assert that it had produced all communications that existed and argued that SkyScription's motion was based on nothing more than a "hunch." (*Id.* at 265, 268.) It noted that despite its evident dissatisfaction, SkyScription had not served any interrogatories or deposition notices to further investigate the situation within the discovery period. (*Id.* at 269.)

In its reply, SkyScription argued that given the facts presented, it should not be forced to take Mediscribes at its word that all responsive communications have been produced. (DN 29.)

## II.   DISCUSSION

### A.   Legal Standard

Trial courts have wide discretion in dealing with discovery matters. *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This language is broadly construed by the federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The scope of discovery is not without limits, however. In assessing whether information is within the scope of discovery, the Court is directed to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving

the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Federal Rule of Civil Procedure 37 allows a party to move for an order compelling disclosure or discovery when "a party fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). Under Rule 37, an "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

### B. Analysis

Before addressing the substance of the Parties' discovery dispute, the Court must first address the proprietary of SkyScription's requested relief. SkyScription's motion is styled a "Motion for Order to Show Cause or In the Alternative, Motion for Sanctions." (DN 27.) It requested that the Court issue a show cause order directing Mediscribes to show cause why it should not be sanctioned for violating the Court's June 14, 2023, Order (DN 23) that directed the Parties to "exchange non-privileged and discoverable documents" or that the Court proceed to sanctioning Mediscribes for violation of the Court's order. It also cited generally to Fed. R. Civ. P. 26(g) and 37. (*Id.* at PageID # 101.) This Court has inherent authority to issue sanctions where "a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons,'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-259 (1975)), or has engaged in conduct "tantamount to bad faith," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980).[1] The Court is not required to explicitly consider whether the conduct at issue could be sanctioned under the Federal Rules or any applicable statute

---

[1] Many cases explain that a court should find bad faith where it concludes that "the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997); *see also Smith v. Detroit Fed'n of Tchrs. Loc. 231, Am. Fed'n of Tchrs., AFL-CIO*, 829 F.2d 1370, 1375 (6th Cir. 1987).

prior to utilizing its inherent power to sanction a party or attorney, though a court ordinarily should do so. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 514 (6th Cir. 2002). The Court's inherent authority should be used with restraint and discretion. *Chambers*, 501 U.S. at 44; *Murray v. City of Columbus*, 534 F. App'x 479, 485 (6th Cir. 2013). The Court also can initiate contempt proceedings to address violations of court orders. *See Elec. Workers Pension Tr. Fund of Loc. Union #58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 385 (6th Cir. 1987) (citing *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 590 (6th Cir. 1987)) ("[T]he objective of any contempt determination is to enforce the message that court orders and judgments are to be taken seriously."). But in seeking a finding of contempt, "[t]he moving party must prove (1) knowledge (2) of a 'definite and specific order of the court' that (3) required the performance or non-performance of a particular act or acts, and (4) failure to comply or perform." *In re Woodberry*, 619 B.R. 393, 396 (Bankr. E.D. Mich. 2020) (citing *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996)). "The 'definite and specific' requirement guards against arbitrary exercises of the contempt power. Contempt cannot be based on 'a decree too vague to be understood' but is instead reserved for those who 'fully understand[ ]' the meaning of a court order and yet 'choose[ ] to ignore its mandate.' " *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017) (quoting in part *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)).

Here, the Court concludes that SkyScription's remedy lies in Fed. R. Civ. P. 37 rather than in the exercise of the Court's inherent authority or contempt proceedings. While below the Court finds that SkyScription has sufficient reasons to be concerned about the completeness of Mediscribes discovery responses, the current record before the Court does not establish bad faith by Mediscribes or the type of conduct sufficient for the undersigned to recommend Mediscribes

11

be held in contempt. The Court is also unconvinced Mediscribes' conduct violated this Courts' June 14, 2023, Order and believes SkyScription's attempt to construe Mediscribes' conduct as a violation of the same twists the meaning of the Court's Order. When read in context of the procedural background set forth above, the Court's directive to the Parties was not meant to serve as substitute for discovery issued under the Federal Rules or the Parties' discovery obligations under the same. Instead, the Court was reacting to Parties who had made little meaningful progress in discovery despite having had ten months to conduct the same. During the June 13, 2023, conference with the Court, the Parties were more concerned with whose fault the lack of discovery was than with progress, and when considered in that context, the Court's order was nothing more than a directive to the Parties to get moving. For these reasons, the Court will consider SkyScription's motion to be a motion to compel made pursuant to Fed. R. Civ. P. 37(a). Considered in that light, the Court finds that SkyScription has demonstrated that Mediscribes' responses to RFPD Nos. 2 and 3 were incomplete and insufficient.

In response to RFPD Nos. 2 and 3, Mediscribes made a large number of boilerplate objections that were not specifically tied to the request at issue. As to RFPD No. 2, Mediscribes incorporated six of its general objections. (DN 27-2.) Mediscribes thus objected to SkyScription's request for Mediscribes' internal communications based on the request being "vague, ambiguous and confusing"; the request "seek[ing] information and/or documentation that is not reasonably relevant to the subject matter in the pending action or reasonably calculated to lead to the discovery of admissible evidence";[2] the request being "overly broad and unduly burdensome"; the burden of

---

[2] The latter does not even align with the current language of Fed. R. Civ. P. 26. *Compare* Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."), *with* Ky. R. Civ. P. 26.02(1) ("Parties may obtain discovery regarding any matter not privileged, which is relevant to the subject matter involved in the pending action . . . . It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.").

12

ascertaining the answer was the same for SkyScription;[3] the request called for a legal conclusion; and the request sought information protected by privilege or work product protection. (*Id.* at 107-08, 117.) It objected to SkyScription's request for communications between SkyScription and Mediscribes as "seek[ing] information and/or documentation that is not reasonably relevant to the subject matter in the pending action or reasonably calculated to lead to the discovery of admissible evidence" and being "overly broad and unduly burdensome." (*Id.*) Most of these objections are nonsensical.[4] For example, how could a request for production of documents call for a legal conclusion? Further, objections regarding vagueness or burden that do not contain details to support the objection are insufficient and boilerplate. As this Court has discussed at length in prior opinions, boilerplate objections are forbidden by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 33(b)(3) (requiring objections to interrogatories to be made with specificity); Fed. R. Civ. P. 34(b)(2)(B) (requiring objections to requests for production to "state with specificity" the grounds for objecting to the request). *See also Mitchell v Universal Music Grp., Inc.*, No. 3:15-cv-174-JHM, 2018 WL 1573233, at *4-7 (W.D. Ky. Mar. 30, 2018), *rev'd in part on other grounds*, 2018 WL 2011934 (W.D. Ky. Apr. 30, 2018) (sustaining parties' objections in part

---

[3] The objection in full stated, "Mediscribes objects to the Interrogatories and Requests for Production of Documents to the extent that the burden of deriving or ascertaining the answer and/or applicable documentation is substantially the same for the Plaintiff[ ] as for the [ ]Defendant[ ]." (DN 27-2, at PageID # 108.) This objection is contextless to the point of being meaningless and, thus, meritless. The phrase "to the extent that" makes the objection tantamount to saying "we object if the request is objectionable," which is insufficient to state a valid and specific objection. While Fed. R. Civ. P. 26(b)(1) lists "the parties' relative access to relevant information" and resources as factors a court should consider in assessing whether discovery is proportional to the needs of the case, Mediscribes' general objection lacks sufficient detail to allow the Court to assess those factors or the proportionality of any request to which Mediscribes attempted to object on that basis.

[4] Given that the requests at issue were for communications, an objection based on privilege is not nonsensical. But Mediscribes did not assert in its initial response that any communications were being withheld on the basis of privilege and its supplemental response merely referenced "nonprivileged communications" without specifying if privileged communications were withheld. It cannot simply raise the issue without being clear as to whether there are actual privileged communications at issue. To the extent the reason it produced so few communications is because most of them were privileged or protected by the work product doctrine or some other applicable protection, it should have already produced a privilege log. If responsive privileged or protected communications exist and it has not already done so, Mediscribes shall produce a privilege log as set forth below.

13

regarding award of costs but affirming conclusion regarding waiver of objections); *Janko Enterprises, Inc. v. Long John Silver's, Inc.*, No. 3:12-CV-345-S, 2013 WL 5308802, at *7 (W.D. Ky. Aug. 19, 2013) ("Unexplained and unsupported 'boilerplate' objections clearly are improper.") Boilerplate is defined as "[r]eady-made or all purpose language that will fit in a variety of documents." *Boilerplate*, Black's Law Dictionary (11th ed. 2019). Mediscribes' objections meet this definition. "When objections lack specificity, they lack effect: an objection that does not explain its grounds (and the harm that would result from responding) is forfeited." *Wesley Corp. v. Zoom T.V. Products, LLC*, No. 17-10021, 2018 WL 372700, at *4 (E.D. Mich. Jan. 11, 2018). Thus, the Court concludes that these boilerplate objections are waived.

As to the documents Mediscribes did produce, on the present record, the Court agrees with SkyScription that it is not required to take Mediscribes at its word that a thorough search has been conducted and all responsive documents have been produced. While Mediscribes appears to have taken a fresh look at its system for documents every time SkyScription raised a concern, *nearly every time it did so it found additional documents*. This suggests that some element of Mediscribes' search process was lacking in either completeness or diligence. Further, as SkyScription points out in its reply, this action concerns a contract that was performed over a three to four year period and involved approximately eleven different Mediscribes' employees. (DN 29, at PageID # 302.) SkyScription alleged that during this period, "Mediscribes' system saw unauthorized use which redirected SkyScription payments to a potentially unauthorized person or entity." (*Id.*) It is difficult to believe that such an event could occur without generating numerous internal communications. At least one of the produced communications referenced saving material for the SkyScription case, which suggests that Mediscribes at some point did conduct some sort of roundup of relevant information. All these facts together give both SkyScription and the Court

14

sufficient grounds to question the completeness of Mediscribes' production. But sanctions are premature at this stage. Instead, the Court will permit SkyScription to take additional discovery to assess the completeness of Mediscribes' production. In particular, given some of the representations made by Mediscribes' counsel regarding the way the transcription services at issue in the Parties' contract were performed, SkyScription's counsel is entitled to serve additional interrogatories directed at discovering how or whether Mediscribes' employees communicated with each other during the relevant period.[5] This discovery will shed light on whether there are likely to be more emails than Mediscribes already produced. The Court will also permit SkyScription to take a Rule 30(b)(6) deposition regarding the search terms and process used by Mediscribes to discover responsive emails and its email system to give further context to whether the search conducted was complete. The Court finds that no more than five additional interrogatories and one Rule 30(b)(6) deposition should be sufficient to get to the bottom of these issues. At the risk of stating the obvious, the Court expects Mediscribes' responses to this supplemental discovery to be forthcoming, comprehensive, and free of obfuscation. The Court will set the Parties a deadline to complete this additional discovery as set forth below. While Mediscribes correctly points out that SkyScription did not seek any of this discovery within the discovery period, it filed its initial motion seeking relief from the Court within the discovery period such that the Court is not inclined to hold that delay against SkyScription at this time and in view of the facts set forth herein.

Finally, both Parties requested fees related to filing their motion/response. As the Court is granting in part and denying in part the instant motion, Fed. R. Civ. P. 37(a)(5) provides that the

---

[5] In its response, Mediscribes explained that "members of [its] production team would perform the[ ] transcription services on records uploaded to SkyScription's electronic platform that the Mediscribes production team accessed through an application installed on their PCs." (DN 28, at PageID # 266.) If that is the case, then it might explain why there are so few internal emails between Mediscribes' employees.

15

court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).  Factors that are relevant to whether an award of sanctions is warranted include whether the party's "failure to sufficiently respond was willful or made in bad faith" and whether the party's failure to respond has prejudiced the party propounding the discovery.  *Hollingsworth v. Daley*, No. 2:15-cv-36-WOB-REW, 2016 WL 2354797, at *2 (E.D. Ky. Mar. 21, 2016), *report and recommendation adopted*, 2016 WL 1737956 (E.D. Ky. May 2, 2016) (citing *Spees v. James Marine, Inc.*, No. 5:08-cv-73, 2009 WL 981681, at *5 (W.D. Ky. Apr. 13, 2009)).  Courts also look to the party's justification for its initial response to the discovery.  *Groupwell Int'l (HK) Ltd. v. Gourmet Exp., LLC*, 277 F.R.D. 348, 361 (W.D. Ky. 2011).  If the party's initial response is reasonably justified an award of reasonable expenses is not appropriate.  *Id.*  An award of fees under Rule 37(a)(5)(C) has been held to be inappropriate where the parties prevailed on a motion to compel "in approximate equal degree." *Wright v. State Farm Fire & Cas. Co.*, No. 2:12-cv-409, 2013 WL 1945094, at *6 (S.D. Ohio May 9, 2013) (citing *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639 (1976); *Reg'l Refuse Sys. v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th Cir. 1988)).  Here, the Court concludes that no award of expenses is appropriate at this time.  As noted above, there is presently no evidence before the Court of bad faith, and after SkyScription's investigation, it may turn out that Mediscribes has produced everything in its possession.  SkyScription has not yet been prejudiced because the Court is giving it additional time to investigate these issues.  And while the Court has permitted SkyScription to take additional discovery, it denied its request for a show cause hearing or other sanction.  Thus, the Court will award no fees related to bringing the motion or filing a response to the same.

### III.     ORDER

Accordingly, IT IS HEREBY ORDERED that SkyScription's Motion for Order to Show Cause and/or for Sanctions (DN 27) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein. SkyScription is granted leave to serve no more than five interrogatories and to take one Rule 30(b)(6) deposition to investigate the issues discussed herein. The Parties shall complete this additional discovery no later than **October 15, 2024**. Within **fourteen days** of entry of the instant memorandum opinion and order, Mediscribes shall either produce a privilege log or shall serve supplemental responses specifying that no privileged or protected material is being withheld despite its objection.

IT IS FURTHER ORDERED that on or before **August 23, 2024**, the Parties shall file a joint status report about whether they have completed sufficient discovery to participate in a productive settlement conference.

cc: Counsel of record